**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| | § | |
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CASE NO. 2:93-CR-00162-001** |
| | § | |
| **WAINSWORTH MARCELLUS HALL** | § | **The Hon. Raymond A. Jackson** |
| | § | |

**MEMORANDUM IN SUPPORT OF MOTION FOR A**
**REDUCED SENTENCE PURSUANT TO THE FIRST STEP ACT OF 2018**

WAINSWORTH MARCELLUS HALL is serving a mandatory minimum, statutory life sentence. There is no parole in the federal system, so Mr. Hall is currently set to die in prison for a drug offense. Mr. Hall has been incarcerated since December 9, 1993, when he was only 29 years old, and has credit for over 350 months imprisonment. For nearly 26 years he has woken up daily facing the grim reality of dying in prison. He is currently 55 years old and eager to reunite with his family. The First Step Act restores fairness to federal sentencing related to crack cocaine offenses and gives individuals like Mr. Hall another chance at a meaningful life.

Our nation's crack laws have changed significantly during Mr. Hall's nearly 26 years of incarceration. "[W]ith the passage of the First Step Act of 2018, . . . [t]his Court now has the authority to reduce this man's sentence to remove the unfair and unjust life sentence that was required to be imposed." *United States v. Powell*, 360 F.Supp.3d 134, 138 (N.D.N.Y., Mar. 14, 2019). A sentence of time served is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). As further explained below, Mr. Hall, through undersigned counsel, respectfully moves that his life sentence be reduced to time served pursuant to Section 404 of the First Step Act of 2018.

### I.  Procedural History

On December 8, 1993, Mr. Hall was charged in an indictment out of the Eastern District of Virginia with violating various federal drug and money laundering laws. *See* Exhibit 1, Indictment. On June 27, 1994 he was found guilty by a jury of the following counts of the indictment: conspiracy to possess with intent to distribute and to distribute in excess of five (5) kilograms or more of cocaine, fifty (50) grams or more of cocaine base, and a quantity marijuana – all in violation of  21 U.S.C. § 841(a)(1) (count 1); conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (count 2); and engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848 (count 3). On September 15, 1994, Mr. Hall was sentenced to life imprisonment on the continuing criminal enterprise count and to a concurrent 240 months for money laundering. The Court vacated the conspiracy conviction pursuant to Fourth Circuit precedent.[1]

Mr. Hall faced the following mandatory minimum and maximum penalties: (1) Count 2, the conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(B)(i), required a maximum of 20 years imprisonment and (2) Count 3, the CCE in violation of 21 U.S.C. § 848, required a minimum of 20 years and a maximum of life imprisonment.

Per the Presentence Report ("PSR"), the total amount of drugs in which Mr. Hall was held accountable for equaled approximately 255 kilograms of crack cocaine. Addendum to PSR at ¶ 22. The sentencing court adopted the quantity found in the PSR at sentencing. *See* Exhibit 2, Sentencing Transcript, 73 lines 5-12. At the time of Mr. Hall's sentencing, his total offense level was calculated at 48 based on the following: (1) a base offense level of 42 based on drug

---

[1] *See Hall v. United States*, 30 F.Supp.2d 883 (E.D. Va. 1998); *see also* Exhibit 2, Sentencing Transcript, 87 lines 1-3.

quantity, (2) a two-point enhancement due to the judge's finding that Mr. Hall possessed a dangerous weapon during the conspiracy; and (3) a four-point enhancement for leadership role in offense. *See* Exhibit 2, Sentencing Transcript, 79 lines 17-18.  Mr. Hall's total offense level of 48 under the Guidelines with a criminal history category of VI resulted in a guideline sentence of life.[2]  The Fourth Circuit Court of Appeals affirmed Mr. Hall's conviction and sentence on August 19, 1996. *United States v. Wainsworth Marcellus Hall*, 93 F.3d 126 (4th Cir. 1996).

## II.  Argument

**A.**     **Mr. Hall is *eligible* for a reduced sentence under Section 404 of First Step Act**

On December 21, 2018, the First Step Act of 2018 was enacted into law. *See* 124 Stat. 2372. Section 404 of the First Step Act made the Fair Sentencing Act of 2010 ("2010 FSA") retroactive to defendants who were convicted of violating a statute, the statutory penalties for which were modified by the 2010 FSA. The 2010 FSA was enacted because Congress recognized that the 1986 Anti-Drug Abuse Act's penalty scheme for crack cocaine offenses was far too harsh and had a disparate impact on African American defendants like Mr. Hall. *See Kimbrough v. United States*, 552 U.S. 85, 97-99 (2007); *Dorsey v. United States*, 567 U.S. 260, 268-69 (2012).

Specifically, Section 2 of the 2010 FSA changed the penalty structure for crack offenses, as follows:

- Section 841(b)(1)(C) now provides for a sentencing range of up to 20 years if the

---

[2] Mr. Hall was considered a career offender which also carries a criminal category of VI. In addition, it is important to note that on November 1, 1994, the Sentencing Commission adopted Amendment 505 to the Guidelines, which modified the base offense levels in controlled substance cases. Amendment 505 deleted base offense levels 42 and 40 and replaced them both with 38; leaving 38 as the maximum level.6 Thus, only a few months after sentencing, Mr. Hall's total offense level would have been reduced to 44. However, a total offense level of 44 with a criminal history category of VI still carried a mandatory guideline life sentence so no judicial remedy was available for Mr. Hall pursuant to Amendment 505 at the time.

offense involved less than 28 grams or an unspecified amount of crack cocaine;

- Section 841(b)(1)(B)(iii) now provides for a sentencing range of 5 to 40 years if the offense involved "28 grams or more" but less than 280 grams of crack cocaine; and,

- Section 841(b)(1)(A)(iii) now provides for a sentencing range of 10 years to life if the offense involved "280 grams or more" of crack cocaine.

21 U.S.C. § 841(b) (2018). Section 404(b) of the First Step Act of 2018 provides that the court "may," upon motion of the defendant, "impose a reduced sentence." First Step Act of 2018, § 404(b) (Dec. 21, 2018).[3]

The 2010 FSA went into effect immediately (August 3, 2010), and, partly to more thoroughly put an end to the "disproportionate status quo," the Supreme Court held that the new penalty structure would apply to any defendant sentenced on or after August 3, 2010, including those who committed the offense prior to that date. *Dorsey*, 567 U.S. at 278. Still, this remedy to the disproportionate status quo fell far short since it left intact many unjust sentences that were imposed under the pre-2010 FSA penalty structure from 1986 to August 3, 2010 or June 21, 2012 when *Dorsey* was decided.[4] The First Step Act of 2018 has now created a freestanding remedy to retroactively reduce sentences of this type.

Section 404 of the First Step Act establishes its remedy in two steps, and it clearly applies to Mr. Hall at each step.

First, the First Step Act defines what offenses are covered by its remedy:

Definition of Covered Offense: In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

---

[3] Available at https://www.congress.gov/bill/115th-congress/senate-bill/756/text?r=115&s=3.

[4] Not all defendants sentenced under the pre-FSA penalties filed a § 2255 or other motion for relief after *Dorsey*.

4

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 404(a) (2018).

The impact of section 2 of the 2010 FSA was not limited to 21 U.S.C. § 841 (and the import and export provisions in 21 U.S.C. § 960, which were similarly amended) though. Statutes whose penalty provisions incorporate by reference the cocaine base quantities contained within § 841 likewise were modified by the 2010 FSA. The statutory penalties for the Continuing Criminal Enterprise statute are tied to and incorporate by reference the statutory provisions that were "modified by section 2 or 3 of the Fair Sentencing Act." Accordingly, § 848 is a "Federal criminal statute" in which the "statutory penalties . . . were modified by section 2" of the Fair Sentencing Act, and it thus constitutes a "covered offense" for purposes of the First Step Act.

Second, the First Step Act provides the circumstances under which a district court may impose a reduced sentence for defendants who were previously sentenced for a "covered offense":

> Defendants Previously Sentenced: A court that imposed a sentence for a covered offense may, on motion of the defendant . . . , impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 404(b) (2018). This provision plainly applies to Mr. Hall because this Court previously "imposed a sentence" on him "for a covered offense," and he is moving for imposition of a reduced sentence. Thus, this Court may now "impose a reduced sentence" on Mr. Hall as if the 2010 FSA were in effect.

Third, the First Step Act provides two narrow limitations on this resentencing power.

> No court shall entertain a motion made under this section to reduce a sentence [1] if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or [2] if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 404(b) (2018). Neither of these limitations apply to Mr. Hall.

**B.      Mr. Hall's reduced sentence under Section 404 of First Step Act should be based on statutory amounts alleged in the indictment**

As this honorable Court recently agreed in *United States v. Wright*, when the jury is not asked to make a specific finding as to the amount of drugs the defendant should have been attributed, the drug quantity attributable to the defendant must be based on the statutory amounts alleged in the indictment, not the offense conduct as noted in the presentence report. *See United States v. Wright*, No. 4:95-CR-00039 RAJ (E.D.V.A. Mar. 6, 2019); *see also Alleyne v. United States*, 570 U.S. 99, 103 (2013); *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Several other district courts facing the same question under the First Step Act of 2018 have reached the same conclusion. *United States v. Latten*, No. 1:02-cr-l 1,2019 WL 2550327, at *2-*3 (W.D. Va. June 20, 2019); *United States v. Booker*, No. 07-cr-843, 2019 WL 2544247, at *2 (N.D. 111. June 20, 2019); *United States v. Stone*, No. l:96-cr-403,2019 WL 2475750, at *2-*3 (N.D. Ohio June 13,2019); *Rose*, 2019 WL 2314479, at *4-*5; *United States v. Smith*, No. 7:04-cr-72, 2019 WL 2092581, at *3 (W.D. Va. May 13, 2019); *United States v. Powell*, 360 F. Supp. 3d 134,139 (N.D.N.Y. 2019); *United States v. Davis*, No. 07-cr- 245s, 2019 WL 1054554, at *2-*3 (W.D.N.Y. Mar. 6, 2019).

At the time of Mr. Hall's trial, the government was not required to prove to the jury that Mr. Hall distributed and/or possessed with intent to distribute specific quantities of drugs. Consequently, at most, the jury found that Mr. Hall distributed and/or possessed with intent to distribute 50 grams of cocaine base and 5 kilograms of cocaine. Today, this quantity results in an

advisory guideline range of 360 months to life for Count 3.[5]

This range is calculated as follows:

Count 2:

Per §2D1.5 of the United States Sentencing Guidelines, the guideline range is calculated based

on the greater of the following:

Base offense level = 30 (marijuana equivalency for 50 grams of cocaine base and 5 kilograms
of cocaine = 1,179 kilograms of marijuana)
Leadership role + 4
Possession of firearm + 2
Total Offense Level = 36

-and-

Base Offense Level = 38 (the greater applies – see USSG § 2D1.5(a))
Possession of firearm + 2 (USSG § 3C1.1)
Total Offense Level = 40
Criminal History Category = VI

**Guideline Range = 360 months to life**

Regardless of the guideline range, the Court is not limited to a guideline sentence under

the First Step Act. Sentencing is a highly individualized process. Unlike when Mr. Hall was

sentenced in 1994, the sentencing guidelines are now advisory. *United States v. Booker*, 543 U.S.

220 (2005). The guidelines are just one factor, among several factors, that sentencing courts are

required to consider in imposing a sentence that is "sufficient but not greater than necessary" to

achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

At this point, Mr. Hall has been in prison nearly half his life—he entered at 29 and has

been in prison for nearly 26 years. He has not previously moved for a reduced sentence pursuant

to the First Step Act of 2018, and has not previously had his sentence reduced as if the Fair

---

[5] The money laundering charge for Count 2 of the indictment is not impacted by the First Step Act. Mr. Hall
received a sentence of 240 months for Count 2 to run concurrent with the life sentence for Count 3. Mr. Hall has
served nearly 26 years actual time in prison and his sentence for Count 2 of the indictment has been satisfied.

Sentencing Act of 2010 applied in his case. And not only is Mr. Hall eligible for relief, but he is deserving of it. He has demonstrated a strong commitment to rehabilitation while in the Bureau of Prisons.

### III.  The 3553(a) Factors Favor a Reduced Sentence of 350 Months Imprisonment

Where a statute places no restriction on the factors a court may consider in imposing a reduced sentence, the court may consider all relevant § 3553(a) factors. See, e.g., *Pepper v. United States*, 131 S. Ct. 1229, 1243, 1249 (2011) (post-sentencing developments, whether favorable or unfavorable to the defendant, bear directly on the court's duty to impose a reduced sentence that is sufficient, but not greater than necessary to serve the purposes of sentencing). In *Pepper*, the Court found that there is no congressional policy to prohibit courts' consideration of post sentencing developments in any context, including at resentencing after reversal on appeal, or "resentencings that occur for [other] reasons," "e.g., when a sentence is set aside on collateral review." *Id*. at 1246.

Mr. Hall entered prison as a 29 year old young man. He is now 55 years old. He has spent the last 25 years – nearly half of his entire life – behind bars. Mr. Hall has made tremendous strides at rehabilitation during this time despite facing the reality of never being released due to a life without parole sentence. Even with knowing that he is set to spend the rest of his life in prison, Mr. Hall has worked extremely hard to better himself and his fellow inmates since the beginning of his incarceration. *See* Exhibit 3, Letter from Wainsworth Marcellus Hall.

In addition, Mr. Hall has impressed BOP staff with his exceptional rehabilitation, specifically staff at USP Victorville where he is currently housed. Attached hereto as Exhibit 4 is a letter from Dr. L. DePierre, Staff Psychologist, and Exhibit 5, a letter from Dr. S. Peprah, Deputy Chief Psychologist, detailing his character and service as a Suicide Watch Companion.

It is of note that serving as a Suicide Watch Companion requires a rigorous procecs with inmate history, background, and character. Finally, it is imperative to also note that Staff Psychologists rarely write letters of such unqualified support as Dr. DePierre has for Mr. Hall.

    **A.    Helping staff protect inmates at personal risk.**

Mr. Hall has helped Bureau of Prisons staff to protect and educate other inmates while incarcerated. Notably, Mr. Hall has served as a mentor in the Bureau of Prison's highly regarded Life Skills program and serves as a Senior Suicide Watch Companion.

Mr. Hall has been certified as a mentor in the highly regarded Skills Program since 2015.[6] *See* Exhibit 4, Letter from BOP Staff Psychologist, Dr. L. Pierre. The Skills Program is a residential treatment program designed to improve the institutional adjustment of male inmates with intellectual disabilities and social deficiencies. The program uses an integrative model which includes a modified therapeutic community, cognitive-behavioral therapies, and skills training. The Skills Program is one of a kind and is only offered at two facilities in the entire federal prison system: (1) FCI Coleman Medium (where Mr. Hall was previously housed) and (2) FCI Danbury Low. For several years while at FCI Coleman Medium, Mr. Hall lived with these intellectually challenged inmates and helped teach them basic life skills. He was trained weekly in cognitive-behavioral therapies by the resident psychologist.

To further evidence his commitment to living a meaningful life and making a difference in the lives of others, Mr. Hall has actively participated in the Suicide Watch Program since 2015. Suicide Watch is a program designed to prevent inmate suicides. Companions are selected through a rigorous process and must meet specific requirements. Disciplinary records, conduct, and individual character are reviewed before people are selected to be a Companion. *See* Exhibit

---

[6] See Directory of Bureau of Prisons' National Programs (May 22, 2015) available at
https://www.bop.gov/inmates/custody_and_care/docs/BOPNationalProgramCatalog.pdf

<u>4</u>, Letter from BOP Staff Psychologist, Dr. L. Pierre.  In addition, Companions must work four-hour shifts checking on inmates who are on suicide watch at least every 15 minutes. *See id.*; *see also* <u>Exhibit 5</u>, Letter from Deputy Chief Psychologist, Dr. S. Peprah. Moreover, Mr. Hall has been promoted to Senior Companion, having completed 71 hours of related training and he is also a Mental Health Companion, completing 18 hours of related training. In his role as a Senior Companion, Mr. Hall's expanded responsibilities include recruiting, selecting and training new Suicide Watch Companions. *See* <u>Exhibit 4</u>, Letter from BOP Staff Psychologist, Dr. L. Pierre. Mr. Hall's performance has been so exemplary, Staff Psychologist, Dr. L. DePierre wrote the following in his support letter:

> "[Mr. Hall] has helped individuals through some of their most trying times. Being a Companion is  a position of trust; they supervise and comfort some of our most vulnerable clients … Mr. Hall has allowed himself to be vulnerable, often letting himself be used as an example, and making visual changes over the course of the group … and uses his experience to guide and challenge young members of the group on their thinking errors … I know that when Mr. Hall is ultimately returned to the community, he will do so having being prepared in every way available to be a good neighbor."

> *Id*.

Mentors in the Skills Program or Suicide Watch Companion program have no extra incentive to participate – other than a personal desire to help others. This speaks volumes of Mr. Hall's resilient character and his unwavering dedication to living a meaningful life. In addition, Mr. Hall has not received any disciplinary infractions in nearly eight years. Most of his infractions are for nonviolent, minor offenses such as phone abuse, refusing to obey an order, and possession of an unauthorized item (excess stamps). Mr. Hall received an infraction for testing positive for marijuana. However, note that this occurred over 10 years ago and he has received no 100-series offenses since that time over a decade ago. Mr. Hall's remaining infractions are all from over 20 years ago. Based on prison records, he received an infraction for

encouraging rioting in 1995. However, it is extremely important to note that this charge occurred over 24 years at the very beginning of Mr. Hall's incarceration. He admits his institutional adjustment in 1995 was not ideal as he came to terms that he was set to spend the rest of his natural life in prison on a drug case. Other than this one incident over two decades ago, Mr. Hall has absolutely no history of violence during his current term of imprisonment. *See* <u>Exhibit 6</u>, BOP Records and Certificates.

> **B.**     **Assisting others through mentorship.**

Mr. Hall provides mentorship even behind prison walls to youth at the SISTAHS group at Marie Curie High School. Through no formal recognition, Mr. Hall helps mentor at-risk youth by sharing his story and personal experiences in hopes of stopping destructive behavior and breaking the cycle of criminality. In her letter of support, group member, Ms. Iris M. Rivera describes Mr. Hall as being the "driving force in encouraging our youth about the choices they make … teaching them examples of his life how important family and education can help shape their lives in a meaningful way." *See* <u>Exhibit 7</u>, Letter from SISTAHS, Iris M. Rivera. Mr. Hall has impressed Ms. Rivera so much that she has even helped secure employment for him with the Save Our Streets organization, to help teach youth "how important it is to be the change you wish to see in the world." *See id*. Furthermore, Mr. Hall has also received a second job offer from the CEO of Sugar Hill Records, Leland Robinson, who attests to the growth Mr. Hall has experienced while incarcerated. *See* <u>Exhibit 8</u>, Job Offer Letter from CEO of Sugar Hill Records, Leland Robinson.

> **C.**     **Work**

Mr. Hall has worked consistently and performed many jobs while incarcerated. Currently, Mr. Hall works with UNICOR as an Automotive Mechanic. In his most recent work

performance evaluation from October 2019, Mr. Hall scored a 20/25 for his work performance with his supervisor noting Mr. Hall "works well with others, he completes all tasks that are given to him with little or no supervision … [and] is an asset to the UNICOR factory." *See* <u>Exhibit 9</u>, Work Performance Evaluation. In addition, Mr. Hall is expected to be punctual, dependable, organized, efficient, responsible, respectful, hardworking and excellent at following instructions in his additional service roles as Senior Suicide Watch Companion and Mental Health Companion. *See* <u>Exhibit 4</u>, Letter from BOP Staff Psychologist, Dr. L. Pierre; <u>Exhibit 5</u>, Letter from Deputy Chief Psychologist, Dr. S. Peprah.

Mr. Hall has also several completed vocational courses, including a 360-hour culinary arts course that equipped him with certification to be able to manage restaurants. *See* <u>Exhibit 6</u>, BOP Records and Certificates. He has also received certifications in Office Automation, Electrician, and HVAC. *Id.* Overall, Mr. Hall has tremendous work ethic and has gained valuable skills while working during his incarceration that position him for gainful employment upon release.

**D.    Education**

Despite knowing he may spend the rest of his life in prison, Mr. Hall has worked admirably to develop into an exemplary and skilled citizen on a continuous path of self-improvement since the beginning of incarceration. Mr. Hall is presently a mature and highly intelligent individual – a stark contrast to the person over 25 years ago who became involved in a drug conspiracy. Mr. Hall has completed over 2,900 hours of education courses and received over 80 certificates, including dozens of courses to substantially enhance his education and personal development in areas such as, but not limited to, drug addition, computer information systems, parenting, keyboarding, anger management, health and wellness, finance, and re-entry.

*See* <u>Exhibit 6</u>, BOP Records and Certificates.

However, Mr. Hall's most notable achievement started right at the beginning of his incarceration. When Mr. Hall learned he would spend the rest of his life behind bars on September 15, 1994, he asked Judge Jackson to do one thing: "Send me somewhere where I could further my education so if something do work out for me in the future, at least I could go back home to my family and do the right thing." *See* <u>Exhibit 2</u>, Sentencing Transcript, 82 lines 8-14. Mr. Hall could not read or write when he was arrested and sentenced to a fundamental death sentence in the instant case. Dedicated to bettering himself, he sought out those that could help him, and within a short amount of time went from illiterate to getting his GED. In speaking with Dr. Pierre, Mr. Hall says, "That was the best part of my whole sentence, because it shaped the rest of my time." *See* <u>Exhibit 4</u>, Letter from BOP Staff Psychologist, Dr. L. Pierre. Remarkably, Mr. Hall made a promise to Judge Jackson over 25 years ago and acted upon it, completely transforming his life.

Mr. Hall lives a life to benefit others, but his service can help our larger society if he is released.  He wants to be a positive example for youth who, like him, make poor decisions during their younger years. He is a living example that mistakes when young do not define any person. He proves that people can change for the better. He will show the world that he can serve more than 25 years (a quarter of a century) in prison and still re-enter society as the productive member that many people see when they interact with him. Mr. Hall longs to succeed in life as a free man. Society is fortunate that his success will involve making our society a better place.

### E. Family

Over the last nearly 26 years, Mr. Hall has matured, received educational training, and developed skill sets to aide him in re-entry even while laboring under the dark cloud of dying in

prison.  More than anything, Mr. Hall wants to be reunited with his mother and his eight children and five grandchildren. Sadly, Mr. Hall has only seen his mother, who is now in her 80's once during the entire time of his imprisonment. Mr. Hall's older brother Peter, who was also a part of the indictment in the instant case, was murdered. Not only had Mr. Hall's mother lost a son, but she has been separated from Mr. Hall for over two decades with her faith being the only assurance that she will ever see him free again.

Mr. Hall has missed out on the opportunity to watch his children grow and be physically present in their lives, but hopes to be there for his grandchildren who have only known him as a prisoner. Despite the circumstances, Mr. Hall and his family have maintained a close relationship via letters, phone calls, and occasional visits. In fact, his children attribute their success as college graduate professionals to the love and encouragement they have received from Mr. Hall.

His daughter, Jahnique who graduated in May 2019 from Rutgers University with a degree in Supply Chain Management, is now 27 and has been separated from her father since just 8 months old with her earliest memories of meeting her father behind a glass window. Jahnique writes, "I am extremely thankful to have been able to build a relationship with my father from prison, but I truly believe it's time for him to be released. […] My father taught me so much from a distance that I have been able to apply into my everyday life." *See* <u>Exhibit 11</u>, Letter from Daughter, Jahnique Wiggins.

In addition, Mr. Hall's dear friend and mother to his children also attributes her independence and success as a mother to Mr. Hall's support and positive outlook, all while behind bars. *See* <u>Exhibit 10</u>, Letter from Friend, Carla Wiggins. Upon his release, Mr. Hall has the support of his family to assist in creating a successful and meaningful life for himself.

**E. Life without parole is harshest imaginable punishment permitted by law in America, short of death**

Mr. Hall has already served nearly three decades, including all of his 30s, 40s, and half of his 50s. He is the last defendant on the case still in prison and submits that his case is one of the cases warranting a downward departure sentence below the low-end of his current guideline range. Requiring him to serve any more time in prison is unnecessary to achieve individual or general deterrence. Instead, the very fact that Mr. Hall was sentenced to life in the first place and has already spent more than 25 years – nearly half of his entire life – behind bars for drug crimes provides a stark warning for any person contemplating similar conduct. Mr. Hall, if released, will be a living testament to the benefits of a law-abiding life of service to humanity.

The profound effect this conviction has had on Mr. Hall will ensure that he carries the weight of this conviction forever. Life without parole is the second most severe penalty permitted by law in America. Mr. Hall is serving the same time in prison as the Unabomber with stark differences in crimes. There is an enormous difference between a lengthy sentence and waking up daily set to die in prison. The reality of living and carrying the unique and heavy burden of life without parole sentence daily for 25 years (~9,125 days) cannot and should not be ignored.

For 26 years, Mr. Hall has purposefully engaged in educational activities, vocational skills training, and re-entry courses, which is highly indicative of post-release success. He accepts full responsibility for his actions and only wishes to have the opportunity to seek gainful employment, be reunited with his family, become a productive citizen to support himself, and most importantly, be a role model of change for his community.

In light of these factors and the goals of Section 3553(a), a below-guideline sentence is appropriate. To require Mr. Hall to spend another day in prison is significantly "greater than

necessary." A sentence of 350 months would allow Mr. Hall to seek immediate release and prepare to reunite with his family and re-enter society as a successful and productive citizen.

## CONCLUSION

Twenty-five years in federal prison is a very, very long time. Mr. Hall availed himself of BOP's programs long before this opportunity to not spend the rest of his life in prison presented itself through a change in law. Upon his release, Mr. Hall will return to family, friends, and a community who will embrace and care for him. For the past nearly three decades, Mr. Hall has severely suffered for his crime. He should be allowed the immediate opportunity to move beyond his mistakes and prove he can be a benefit to society. There is nothing to be gained by anyone to have Mr. Hall spend one more day behind prison walls. For this particular defendant, on these particular facts, in this particular case, any prison sentence over 350 months would not further the 3553(a) goals.

WHEREFORE, for these reasons, Mr. Hall respectfully asks the Court to reduce his sentence on count 3 of the indictment to 350 months (time served).

Respectfully submitted,

By:     /s/   *__Adam M. Carroll__*
Adam M. Carroll, Esquire
VSB#68017
WOLCOTT RIVERS GATES
200 Bendix Road, Suite 300
Virginia Beach, Virginia 23452
Telephone: 757-497-6633
Facsimile: 757-687-3655
E-mail:  acarroll@wolriv.com
*Local Counsel for Wainsworth Marcellus Hall*

Brittany K. Barnett, Esquire *(pro hac vice pending)*
Buried Alive Project
3131 McKinney Avenue, Suite 600
Dallas, Texas 75204
Telephone: (214) 919 - 4421
Facsimile: (214) 919 - 5915
E-mail:  brittany@buriedaliveproject.org
*Counsel for Wainsworth Marcellus Hall*


## CERTIFICATE OF CONFERENCE

I hereby certify that on the 22nd day of October 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notification of such filing (NEF) to all counsel of record including the following:

Melissa E. O'Boyle
Randy C. Stoker
Asst. United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
melissa.oboyle@usdoj.gov
randy.stoker@usdoj.gov

/s/  ***Adam M. Carroll***
Adam M. Carroll, Esquire
VSB#68017
WOLCOTT RIVERS GATES
200 Bendix Road, Suite 300
Virginia Beach, Virginia 23452
Telephone: 757-497-6633
Facsimile: 757-687-3655
E-mail:  acarroll@wolriv.com
*Local Counsel for Wainsworth Marcellus Hall*