IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 2:93-CR-162-001 |
| | ) | |
| WAINSWORTH MARCELLUS HALL, | ) | |
| | ) | |
| Defendant. | ) | |

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
FOR MODIFICATION OF SENTENCE UNDER THE FIRST STEP ACT OF 2018

The defendant seeks to lower his sentence under Section 404 of the First Step Act, which extends the Fair Sentencing Act of 2010 to defendants who were sentenced before August 3, 2010. But as explained below, the defendant is ineligible for relief. In accordance with this Court's Order of October 23, 2019, (ECF No. 853), the United States addresses below why the defendant is ineligible for relief and the procedures that apply to motions under § 404.

As explained below, the Court is not required to hold a hearing, have defendant present, or conduct any *de novo* resentencing.

**I. Introduction**

  *A. Overview of the Legal Framework*

Briefly, the procedural framework that applies to motions under § 404 is defined by 18 U.S.C. § 3582(c)(1)(B). Section 3582(c)(1)(B) provides that a "court may not modify a term of imprisonment once it has been imposed except that—(1) in any case— . . . (B) the court may modify an imposed term of imprisonment to the extent otherwise *expressly permitted by statute*. . . ." Because § 404 of the First Step Act expressly authorizes by statute changes to the penalty

1

range for certain long-final sentences, eligible defendants may seek to reduce their sentences under § 3582(c)(1)(B).

Notably, proceedings under § 3582(c) allow a limited "modification" of a sentence, not a *de novo* resentencing. In keeping with those limited proceedings, under Fed. R. Crim. P. 43(b)(4), a defendant's presence is not required when "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." Likewise, the Supreme Court has held that a "modification" of a sentence does not constitute a *de novo* resentencing. *See, e.g., Dillon v. United States*, 560 U.S. 817, 825 (2010) ("The language of § 3582(c)(2) belies Dillon's characterization of proceedings under that section. By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the 'modif[ication of] a term of imprisonment' by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission.").

Substantively, § 404(b) of the First Step Act specifies that a court "may" in its discretion "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." But § 404(c) adds that "[n]o court shall entertain a motion" for such relief if a defendant's "sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010." Section 404(c) of the Act also expressly provides that any relief is discretionary: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."

### B. *Application of § 404 of the First Step Act to Defendant*

Defendant Wainsworth Marcellus Hall, "headed a violent major 'crack' cocaine organization" for approximately five years "from its conception until its conclusion." PSR ¶¶ 17,

63. The defendant and his drug trafficking organization supplied a staggering 255 kilograms of crack cocaine to the Hampton Roads region as well as to the cities of Washington, D.C., Greensboro, Charlotte, and Atlanta generating $6,000,000 in revenue. PSR ¶¶ 17, 59, and 63. The defendant coordinated the managers, distributors, packagers, cash couriers and narcotics couriers, and even locked "couriers in apartments prohibiting them from leaving" until cars had been loaded with drugs and money." PSR ¶¶ 62-63. The defendant's crack cocaine organization was responsible for multiple murders, the shooting of an innocent 13 year-old bystander, and the attempted murder of a Hampton Police Detective and a DEA Special Agent. PSR ¶¶ 37, 38, 43, 44. *See* Indictment ¶¶ 19, 27, 34, and 36. At sentencing the Court summed up the nature and circumstances of the offense stating, "you chose to go into a life of crime and you not only did that, but you corrupted other people and other people's children who sent them off to college to do something positive. You corrupted them, too." Sentencing Transcript, ECF No. 850 at 87 lines 12-16. The Court continued to state, "you haven't done one thing to help yourself … there's a lot of people still out there being corrupted, being injured and killed by the same source who supplied the dope to you that you supplied to other people." *Id*. at 87 lines 22-23, and 88 lines 8-11.

The defendant was charged with eleven other co-defendants in a 23 count indictment returned by the Grand Jury on December 8, 1993. ECF No. 839. The indictment alleged that it was part of the conspiracy that "the defendants and unindicted co-conspirators would and did use firearms and engaged in a pattern of violent activity, including murder, assaults, and threats of violence to further the goals of the conspiracy." *Id*. at 5. The overt acts of Count One of the indictment specifically allege the distribution of multiple kilograms of crack cocaine. *Id*. at 7, 9, and 10 (¶¶ 13, 15, 17, 25, 26, 29, 32, 33).

Nine co-defendants pleaded guilty. PSR ¶¶ 4, 5, 7, 9, 10, 13. ECF Nos. 399, 420, and 421. One co-defendant was acquitted. PSR ¶ 6. The defendant's brother was murdered before he could stand trial. ECF No. 838 at 14. On June 27, 1994, following a two-week trial, the defendant was found guilty of Count One, Conspiracy to Possess with Intent to Distribute and to Distribute in Excess of Fifty (50) grams of Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) (Count One); Count Two, Money Laundering and Conspiracy, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 371, and 2 (Count Two); and Count Three, Continued Criminal Enterprise, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) (Count Three). PSR ¶ 2.

Defendant's base offense level for Count Three pursuant to § 2D1.5(a)(1) was 46—4 plus the offense level 42 from § 2D1.1 applicable to the underlying offense. Defendant received a 2-point enhancement for possession of a dangerous weapon pursuant to § 2D1.1(b)(1). With 16 Criminal History Points, the defendant was assigned a Criminal History Category VI. With a total offense level of 48 and a Criminal History Category of VI, defendant's guideline range was Life. ECF No. 855 at 34-41.

The defendant was sentenced to Life in prison on September 15, 1994. ECF No. 378. The Court vacated the conviction on Count One and sentenced the defendant to 240 months imprisonment on Count Two to run concurrently with Count Three. *Id*. *See also* ECF No. 850 at 88-89. For the Continued Criminal Enterprise conviction (Count Three), the Court sentenced the defendant to Life imprisonment. *Id*.

The defendant's convictions and sentence have been affirmed on direct appeal. *United States v. Wainsworth Marcellus Hall*, 93 F.3d 126 (4th Cir. 1996).

His motions for relief under 28 U.S.C. § 2255 were denied. ECF No. 620, 666, 715. *See* ECF Nos. 591, 605, 605, 613, 653, 714. The defendant's Motion to Reduce Sentence re: Crack

Cocaine Offense was denied. ECF No. 745. The defendant's Motions to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(2) were also denied. ECF Nos. 792 and 819.

The defendant's long-final sentence is not open to further attack now. The defendant is ineligible for relief under Section 404 of the First Step Act because he was convicted of a Continuing Criminal Enterprise under 21 U.S.C. § 848, and the First Step Act does not alter the life sentence that he received for that count.

The United States points out that, while paragraph 116 of the PSR reflects a statutory range of 20 years to Life for count two, the defendant did qualify for a mandatory life sentence under § 848(b). He was the leader of the organization, and the offense involved at least 300 times the quantity of substance described in 21 U.S.C. § 841(b)(1)(B). Although the Fair Sentencing Act increased the quantity of crack needed to trigger § 841(b)(1)(B) from 5 grams to 28 grams, the increase makes no difference here. Multiplying 300 times 28 grams yields 8.4 kilograms, and the defendant was held accountable for over 255 kilograms of cocaine base. PSR ¶ 59. Hence, under § 848(b), the defendant would still be subject to a mandatory life sentence. And at the time of defendant's sentencing, statutory provisions that did not change the statutory maximum (which is always at least life imprisonment for every violation of § 848) and instead increased the statutory mandatory minimum to life did not have to be submitted to the jury, as is now required under *Alleyne v. United States*, 570 U.S. 99 (2013).

Nevertheless, it appears that the Court did not impose a mandatory life sentence under § 848(b). But that produces a new problem for the defendant: the statutory penalty range for count three was not determined using drug quantity. Nothing in the requirements of § 848(a) and (c) turns on the quantity of crack. Hence, count three is not a "covered offense" under § 404 of the First Step Act. Under § 404(a), a "'covered offense' means a violation of a Federal Criminal

5

statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Again, the "statutory penalties" of count three were not modified at all by section 2 or 3 of the Fair Sentencing Act. And no retroactive amendment alters the defendant's guideline range of life imprisonment, foreclosing relief under U.S.S.G. § 1B1.10 and 18 U.S.C. § 3582(c)(2). The 255 kilograms of crack determined at sentencing, together with the defendant's other guideline enhancements, still yield a life sentence.

Finally, some defendants have erroneously argued that the bare fact that the indictment charged 50 grams or more of crack, instead of 280 grams or more, by itself makes a defendant eligible for relief under Section 404, and as the defendant points out some district judges have agreed with that view. As explained below, that view is mistaken. *See, e.g., United States v. Glover*, 2019 WL 1562833, \*7 (S.D. Fla. Apr. 11, 2019) (denying First Step Act motion even though indictment did not charge drug quantity required under the Fair Sentencing Act); *United States v. Haynes*, 2019 WL 1430125, \*2 (D. Neb. Mar. 29, 2019) ("[T]he government charged the offense in Count II of the Indictment in accordance with the wording of the statutes as they existed at the time of the Indictment. If the Fair Sentencing Act had been in effect at the time of the Indictment, the underlying and undisputed facts demonstrate that the government still would have charged Haynes under 21 U.S.C. § 841(b)(1)(B)(iii))."); *United States v. Potts*, 2019 WL 1059837, \*2 (S.D. Fla. Mar. 3, 2019) (a defendant seeking relief under § 404 of the First Step Act may not litigate claims under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013)).

Once the offense in count one is shown to continue to involve at least 280 grams of crack, the defendant's life sentence for that count continues to apply. This Court in *Wright v. United*

*States,* ruled that the Indictment is given preeminence, in part, because it is, in most cases, the document that was submitted to the jury and proved beyond a reasonable doubt. *Wright v. United States*, 393 F.Supp.3d 432, 442 (E.D. Va. 2019). In the instant case, the overt acts of Count One of the indictment specifically allege the distribution of multiple kilograms of crack cocaine far exceeding the 280 gram threshold. ECF No. 839 at 7, 9, and 10 (¶¶ 13, 15, 17, 25, 26, 29, 32, 33).

Section 401(c) provides that the changes introduced by § 401 to the penalties for prior drug offenses "shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*." Plainly, a sentence for the defendant's offenses had been imposed as of the date that the First Step Act was enacted. Hence, the changes in § 401 do not apply retroactively.

Even if the defendant were eligible for relief, his criminal conduct—the leader of a violent large scale crack cocaine drug trafficking organization that spanned five years, involved eleven co-defendants, multiple murders, assaults, batteries, shootings, abduction, money laundering, and other crimes—together with his abysmal criminal history demonstrates that he is not the type of defendant who should receive reconsideration of his sentence.

**III.** **Legal Framework for Applying § 404 of the First Step Act.**

    *1.* *Procedures for applying § 404 of the First Step Act and the scope of relief.*

Section 404(a) of the First Step Act defines a "covered offense" to which § 404 applies. A "'covered offense' means a violation of a Federal Criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010."

When a defendant seeks a sentence reduction for a covered offense, the text of § 404 provides several indications of how any sentence reduction should be carried out and whether a

court should grant relief. One threshold point is that in enacting the First Step Act, Congress did not repeal 18 U.S.C. § 3582 and the limitations that it imposes on modifying sentences that have become final. Indeed, through provisions such as the First Step Act's changes in § 603(b) to motions for compassionate release under § 3582(c)(1)(A), Congress specifically amended certain provisions of § 3582(c) while leaving the rest of the statute undisturbed. It cannot plausibly be argued that the First Step Act repealed § 3582(c)'s overarching framework for restricting modifications of final sentences. A "Court is not at 'liberty to pick and choose among congressional enactments' and must instead strive 'to give effect to both.' A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing "clearly expressed congressional intention' that such a result should follow." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (citations omitted). Indeed, a congressional intention to repeal entirely an earlier statute must be "clear and manifest," and "in approaching a claimed conflict, we come armed with the 'stron[g] presum[ption]' that repeals by implication are 'disfavored' and that 'Congress will specifically address' preexisting law when it wishes to suspend its normal operations in a later statute." *Id*. (citations omitted). In short, § 404 must be read together with other existing statutes, including § 3582(c). *See, e.g., United States v. Fausto*, 484 U.S. 439, 452-53 (1988) (courts must carry out the "classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination").

Once it is accepted that § 404 of the First Step Act must be harmonized with § 3582, then a court must take into account that § 3582(c) provides an overarching provision that governs the finality of criminal sentences. *See, e.g., United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("[T]he law closely guards the finality of criminal sentences," and "Section 3582, which governs the imposition of federal prison sentences, embraces this principle").

Some defendants who have been convicted of distributing very large quantities of crack, like defendant, have sought to establish their eligibility for a sentence reduction by invoking a sweeping theory of eligibility under Section 404 of the First Step Act. They argue that, for example, every violation for distributing crack under § 841(b)(1)(A) before August 3, 2010, would necessarily count as a "covered offense" under Section 404(a) of the First Step Act. As just noted, as sweeping as this argument is, that argument still fails to demonstrate defendant's eligibility for a violation of § 848(a) and (c), for those statutory penalties are unaffected by the First Step Act. Nevertheless, it is helpful to understand why not every violation for distributing crack under § 841(b)(1)(A) before August 3, 2010, would necessarily count as a "covered offense" under Section 404(a) of the First Step Act. Before addressing why this argument fails, it is helpful to set forth the full statutory language of Section 404:

**SEC. 404. APPLICATION OF FAIR SENTENCING ACT.**

    (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

    (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

    (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

There are three reasons why this statutory language does not make every offense for distributing crack cocaine in violation of § 841, for example, eligible for a sentence reduction.

*First*, the definition of a "covered offense" in Section 404(a) refers to a "violation . . . that was committed" before August 3, 2010. The plain meaning of a "violation . . . that was committed" refers to a defendant's particular conduct, not the bare statutory definition of the crime and its penalties. As the definition of "violation" in Black's Law Dictionary shows, the word "violation" refers to particular *conduct*. The word "violation" means "1. An infraction or breach of the law; a transgression. See INFRACTION. 2. The act of breaking or dishonoring the law; the contravention of a right or duty." The Supreme Court has explained that the word "offense" may refer to a defendant's particular conduct and not a generic crime. *Nijhawan v. Holder*, 557 U.S. 29, 34 (2009); *United States v. Hayes*, 555 U.S. 415, 426 (2009). But when Congress referred not merely to a "violation," but also specified that it was referring to a "violation" that was "committed" by a particular date, those particular qualifying words dictate a circumstance-specific reading. *United States v. Simms*, 914 F.3d 229, 244 (4th Cir. 2019) (en banc) (citing *Nijhawan*, 557 U.S. at 37-38; *Hayes*, 555 U.S. at 427).

*Second*, even assuming that there were some ambiguity about whether statutory language that refers to when a "violation" was "committed" was meant to refer to a defendant's specific conduct, that ambiguity is swept away by the statutory text in Section 404(b) of the First Step Act. Under Section 404(b), a court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed." In cases where the particular facts of the "violation" that the defendant "committed" would satisfy the new statutory thresholds of the Fair Sentencing Act, the defendant's punishment would not change. Put differently, if the defendant were prosecuted today, the "violation" that the defendant "committed" would yield exactly the same punishment. The Fair

Sentencing Act would not authorize a reduced sentence when the defendant's conduct exceeded the new 28-gram and 280-gram thresholds.

*Third*, if the extremely broad theory of eligibility were correct, it would be hard to understand why any defendant prosecuted under § 841 would fail to be eligible—even if the original offense was punished under a portion of § 841 that does not require proof of a particular drug quantity and even if the offense did not involve crack cocaine. After all, under the theory espoused by defendants, all that would really matters would be that Fair Sentencing Act modified § 841. But that cannot possibly be what Congress meant. There would be no reduced sentence for a heroin offense, for example, when, under Section 404(b), a court sought to apply the Fair Sentencing Act as if it "were in effect at the time the covered offense was committed."

The points just made that a court should look to the "violation" that a defendant "committed" are reinforced by the limitations under § 3582(c)(1)(B).

### 2. *Motions for relief under the First Step Act should be analyzed under 18 U.S.C. § 3582(c)(1)(B).*

Although the statutory structure and language of § 404 of the First Step Act shows that Congress did not intend for motions for relief under § 404 to be effectuated through habeas petitions, Congress has provided, however, a straightforward mechanism for eligible defendants to obtain relief under § 404 of the First Step Act. Section 3582(c)(1)(B) provides that a "court may not modify a term of imprisonment once it has been imposed except that—(1) in any case— . . . (B) the court may modify an imposed term of imprisonment to the extent otherwise *expressly permitted by statute* or by Rule 35 of the Federal Rules of Criminal Procedure." Section 404 of the First Step Act expressly authorizes by statute changes to the penalty range for certain long-final sentences.

As already noted above, Section 404 did not repeal § 3582(c) and must be read together with other existing statutes, including § 3582(c). And § 3582(c) readily fits the structure of § 404 of the First Step Act because § 404(b) of the First Step Act and § 3582(c) both provide that multiple actors—including a district court, the Director of the Bureau of Prisons, the government, and defendants—may initiate requests for sentence reductions. Reflecting the movants authorized to initiation relief under § 404(b) of the First Step Act, the pre-existing statutory provisions in § 3582(c) cover

- motions filed by the government (such as motions under Fed. R. Crim. P. 35 addressed in § 3582(c)(1)(B)),
- motions filed by the Director of the Bureau of Prisons (such as motions addressed in § 3582(c)(1)(A) and § 3582(c)(2)),
- motions filed by defendants (such as motions addressed in § 3582(c)(1)(A) and § 3582(c)(2)), and
- proceedings initiated by the sentencing court (such as motions addressed in § 3582(c)(2)).

In short, § 3582(c)(1)(B) provides a direct fit as a mechanism for granting relief under § 404 of the First Step Act.

### 3. *Restrictions on relief under § 3582(c) show that relief under the First Step Act via § 3582(c)(1)(B) is similarly limited.*

The mechanism provided by § 3582(c) has a limited scope and does not authorize a *de novo* resentencing. "Section 3582(c)(1)(B) provides for a sentence modification only as 'expressly permitted by statute.' Neither the Fair Sentencing Act nor the First Step Act 'expressly' provide for a full or plenary resentencing or for a reconsideration of original sentencing determinations." *Potts*, 2019 WL1059837 at *2.

In keeping with this principle, the limited scope of sentence modifications under § 3582(c) holds true for motions for sentencing reductions under Rule 35(b), which are authorized by § 3582(c)(1)(B). When the government seeks to reduce a sentence for a substantial assistance under Fed. R. Crim. P. 35(b), the defendant may not use the opportunity of a Rule 35(b) motion to relitigate claims such as assertions of guideline error or claims of constitutional error at the original sentencing. *See, e.g., United States v. Taylor*, 414 F.3d 528, 535 (4th Cir. 2005) ("Taylor is foreclosed from asserting a *Booker* claim in the present appeal [of a Rule 35(b) reduction] because the original judgment of conviction entered on October 30, 2000 is not before us. The only judgment of conviction before us is the amended judgment reentered by the district court on January 22, 2004, which amended judgment sentences Taylor to 141 months' imprisonment based upon the government's Rule 35(b) Motion."). Rule 35(b) motions are designed to address the limited question of a defendant's substantial assistance. *Pepper v. United States*, 562 U.S. 476, 502 n.15 (2011) ("Rule 35(b) departures address only postsentencing cooperation with the Government, not postsentencing rehabilitation generally, and thus, a defendant with nothing to offer the Government can gain no benefit from Rule 35(b)."). This limited scope of a Rule 35(b) motion also helps explain why defendants lack a constitutional right to counsel for such motions. *Taylor*, 414 F.3d at 535-37.

Likewise, when a defendant obtains relief under § 3582(c)(1)(B), that does not affect the finality of the original underlying sentence and judgment. *United States v. Sanders*, 247 F.3d 139, 142-43 (4th Cir. 2001) (explaining that "[t]he plain language of 18 U.S.C. § 3582(b) establishes that a modification of a sentence does not affect the finality of a criminal judgment").

The Supreme Court has also held that motions under § 3582(c)(2) are likewise not *de novo* resentencings. *See, e.g., Dillon v. United States*, 560 U.S. 817, 825 (2010) ("The language of

13

§ 3582(c)(2) belies Dillon's characterization of proceedings under that section. By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the 'modif[ication of] a term of imprisonment' by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission."). Thus, in keeping with the limited scope of a sentence reduction under § 3582(c)(2), a court granting such a reduction should not revisit guideline calculations other than the retroactive guideline amendment.

The defendant argued in *Dillon* that in ruling on a § 3582(c)(2) motion, the district court "should have corrected the *Booker* error that resulted from the initial sentencing court's treatment of the Guidelines as mandatory, and it should have adjusted his criminal-history category, which he now contends was erroneously inflated." 560 U.S. at 831. But the Supreme Court rejected those claims. "Dillon's argument in this regard are premised on the same misunderstanding of the scope of § 3582(c)(2) proceedings dispelled above. As noted, § 3582(c)(2) does not authorize a resentencing. Instead, it permits a sentence reduction within the narrow bounds established by the Commission." *Id*. Although that restriction on a *de novo* resentencing is reflected in U.S.S.G. § 1B1.10(b)(1), that limitation is also embodied in the overarching structure and language of § 3582(c) and § 3582(b).

Of course, when courts determine that a defendant's offense involved a drug quantity supporting the same offense level (or statutory range) both before and after a retroactive change in sentencing law, courts should deny relief. *See, e.g., United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016); *United States v. Rios*, 765 F.3d 133, 138 (2d Cir. 2014); *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012); *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *United States v. Anderson*, 707 F.3d 973, 975 (8th Cir. 2013); *United States v. Mercado-Moreno*, 869 F.3d 942, 953–55 (9th Cir. 2017); *United States v. Battle*, 706 F.3d 1313, 1319 (10th Cir. 2013); *United*

*States v. Hamilton*, 715 F.3d 328, 340 (11th Cir. 2013); *United States v. Wyche,* 741 F.3d 1284, 1293 (D.C. Cir. 2014).

Even though a higher quantity threshold may apply today than was charged in the indictment, defendants may not litigate now claims of error under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), or *Alleyne v. United States*, 570 U.S. 99 (2013), if the record establishes that the higher drug quantity remains satisfied. A motion under § 404 again is not a *de novo* resentencing, and neither *Apprendi* nor *Alleyne* apply retroactively. *See Potts*, 2019 WL 1059837 at *2. The Fourth Circuit long ago rejected the retroactivity of a claim under *Apprendi*. *See, e.g., United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005) (citing *United States v. Sanders*, 247 F.3d 139, 148 (4th Cir. 2001)). And courts of appeals have consistently held that *Alleyne* is not retroactive. *See, e.g., Butterworth v. United States*, 775 F.3d 459, 464–65 (1st Cir. 2015); *United States v. Redd*, 735 F.3d 88, 91–92 (2d Cir. 2013) (per curiam); *United States v. Reyes*, 755 F.3d 210, 212–13 (3d Cir. 2014); *United States v. Olvera*, 775 F.3d 726, 730 & n.12 (5th Cir. 2015); *In re Mazzio*, 756 F.3d 487, 489–91 (6th Cir. 2014); *Crayton v. United States*, 799 F.3d 623, 624 (7th Cir. 2015); *Walker v. United States*, 810 F.3d 568, 574 (8th Cir. 2016); *Hughes v. United States*, 770 F.3d 814, 817–19 (9th Cir. 2014); *In re Payne*, 733 F.3d 1027, 1029–30 (10th Cir. 2013); *Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1285–86 (11th Cir. 2014).

A sentence modification under § 3582(c)(1)(B) is a limited proceeding. Because § 3582(c) requires that a court be "expressly" granted authority to modify a sentence, courts cannot find any open-ended power to revisit sentences through statutory silence. *Potts*, 2019 WL 1059837 at *2; *see also Goodwyn*, 596 F.3d at 236 ("Section 3582(c)(2) does not expressly provide that a court may grant only one sentence modification, but neither does it in any way suggest that a court may grant more than one modification. As the clear intent of § 3582 is to *constrain* postjudgment

sentence modifications, we hold that this silence precludes the interpretation of § 3582(c)(2) charged by Goodwyn, an interpretation that would permit unlimited motions for reconsideration over an unspecified period of time.").

The limited scope of § 3582(c) proceedings is also reflected in Fed. R. Crim. P. 43(b)(4). Under that Rule, "A defendant need not be present under any of the following circumstances. . . . The proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." The text of Rule 43(b)(4) refers broadly to all modifications authorized by § 3582(c). *See also United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000) ("A motion pursuant to § 3582(c) 'is not a do-over of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution," and a court need not hold a hearing or have the defendant present for ruling on such a motion) (citations omitted).

Some defendants have argued that the First Step Act must require a *de novo* resentencing because § 404(b) states that a court may "impose" a lower sentence for eligible defendants, and the defendant here appears to allude to this point. According to defendants, the word "impose" necessarily means that a *de novo* resentencing is required. Defendants point out that a number of statutory provisions in § 3553(a) governing an original sentencing refer to "imposing" a sentence and therefore argue that the word must imply that a *de novo* resentencing is required by § 404 of the First Step Act. *See, e.g.,* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.").

But defendants read too much into the word "impose." First, § 3582(c)(2) itself expressly cross-references § 3553(a) without thereby converting a proceeding under § 3582(c)(2) into a *de novo* resentencing. Second, in discussing sentence reductions under § 3582(c)(2)—which are not

16

*de novo* resentencings—the Supreme Court has freely used the word "impose" to describe the new, lower sentence that results from applying the retroactive amendment. *See, e.g., Dillon*, 560 U.S. at 827 ("Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to *impose* a term 'comparably' below the amended range.") (citing U.S.S.G. § 1B1.10(b)(2)(B)). Nothing in the plain meaning of the word "impose" precludes using that word to describe a court's imposition of a lower sentence under § 3582(c). *See Potts*, 2019 WL 1059837 at *2 (rejecting that the word "impose" requires a *de novo* sentencing).

In sum, relief under § 404 of the First Step Act should be effectuated through § 3582(c)(1)(B). That statute does not authorize a *de novo* resentencing and instead permits only a "modification" of a sentence for the portion of the sentence altered by § 404 of the First Step Act. Because the proceeding is limited and narrow in scope, defendants do not have a right to be present and cannot revisit other claims of error.

Under the above framework, the defendant is plainly ineligible for relief. For count three, even if the defendant was not sentenced under § 848(b) and instead was subject to § 848(a) and (c), the statutory maximum is still life imprisonment without regard to the quantity of drugs involved. Hence, the First Step Act alters nothing about the statutory penalty range on this view. In turn, the defendant had an offense level for count three of 48 under U.S.S.G. §§ 2D1.5(a)(1) and 2D1.1, which still today would result in a guideline range of life imprisonment.

Similarly, the defendant cannot persuasively argue that his life sentence on count three would be affected by the First Step Act. The indictment specified in count one that the defendant possessed with intent to distribute and distributed kilograms of crack cocaine far exceeding the 50 gram threshold in place at the time of sentencing and in excess of the 280 gram threshold that

would apply if defendant were sentenced today. In light of the jury's findings, the PSR, and the Court's sentence, the defendant has no colorable basis for attacking his sentence.

**IV.     Conclusion**

In sum, under the law, this Court must deny relief.  The defendant led a violent and sprawling drug conspiracy, while armed, and oversaw the distribution of millions of dollars' worth of drugs.  Even if the defendant were eligible, the Court should nonetheless deny relief.

> Respectfully submitted,
>
> G. Zachary Terwilliger
> United States Attorney
>
> By:  /s/
> John F. Butler
> Assistant United States Attorney
> United States Attorney's Office
> 8000 World Trade Center
> 101 West Main Street.
> Norfolk, Virginia 23510
> Telephone:  (757) 441-6331
> Facsimile:  (757) 441-6689
> E-Mail: john.f.butler@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on the 6th day of December 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record including:

    Adam M. Carroll, Esq.
    Wolcott Rivers Gates
    200 Bendix Road, Suite 300
    Virginia Beach, Virginia 23452
    *Local Counsel for Wainsworth Marcellus Hall*

    Brittany K. Barnett, Esq.
    Buried Alive Project
    3131 McKinney Avenue, Suite 600
    Dallas, Texas 75204
    *Counsel for Wainsworth Marcellus Hall*

                                          /s/
                                      John F. Butler
                                      Assistant United States Attorney
                                      United States Attorney's Office
                                      8000 World Trade Center
                                      101 West Main Street.
                                      Norfolk, Virginia 23510
                                      Telephone:  (757) 441-6331
                                      Facsimile:   (757) 441-6689
                                      E-Mail:  john.f.butler@usdoj.gov