FILED

FEB 1 9 2020

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**WAINSWORTH MARCELLUS HALL,**

      **Petitioner,**

**v.**                              **CRIMINAL ACTION NO. 2:93-cr-162(1)**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Wainsworth Marcellus Hall's ("Petitioner") motion, through counsel, seeking relief under the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act ("FIRST STEP Act"), Pub. L. No. 115-391, 132 Stat. 5194 (2018). ECF Nos. 837–838. For the reasons stated below, Petitioner's motion is **GRANTED.**

### I. HISTORICAL BACKGROUND

Our analysis of the FIRST STEP Act begins with a historical background of the federal sentencing scheme as it relates to those convicted of cocaine base, or "crack cocaine" offenses. On October 12, 1984, Congress passed the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-47, 98 Stat. 1976 ("CCCA"), Pub.L. 98-473, 98 Stat. 2068, which included two important statutory penalty schemes relevant here. First, the CCCA included the Sentencing Reform Act of 1984 ("SRA") which created the United States Sentencing Commission. Pub. L. No. 98-473, Tit. II, Ch. II, 98 Stat. 1987. The Sentencing Commission established the Federal Sentencing Guidelines, which under 18 U.S.C. § 3553(b)(1) became mandatory. *See* United States Sentencing Guidelines, § 1A1.1. Second, the CCCA included the Controlled Substances Penalties Amendments Act of 1984, which for the first time made punishment dependent upon the quantity

of the controlled substance involved. Pub. L. 98-473, Tit. II, Ch. V, 98 Stat. 2068; *Chapman v. United States*, 500 U.S. 453, 461 (1991). The purpose of this amendment was to provide a more rational penalty structure for drug trafficking offenses by eliminating sentencing disparities caused by classifying drugs as narcotic and nonnarcotic, as was previously the case. *Id.* (citation and quotations omitted).

Two years later, Congress enacted the Anti-Drug Abuse Act of 1986 ("ADAA"), Pub. L. 99-570, § 1002, 100 Stat. 3207, which added mandatory minimums to certain offenses involving specific weights of certain controlled substances. Notably, the ADAA contained a 100-to-1 ratio that treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine. *See Kimbrough v. United States*, 552 U.S. 85, 96 (2007). An individual who was convicted of a drug trafficking offense involving only 50 grams or more of crack cocaine was subjected to the statutory range of 10-years to life, the same as someone who was convicted of a drug trafficking offense involving 5 kilograms of powder cocaine. *See* 21 U.S.C. § 841 (b)(1)(A)(ii), (iii) (1993). This created a different sentencing disparity which had the effect of not only punishing a low-level dealer who had crack cocaine harsher than a major supplier of powder cocaine, but also promoting "unwarranted disparity based on race." *United States v. Wirsing*, 943 F.3d 175, 178 (4th Cir. 2019), as amended (Nov. 21, 2019) (citing *Kimbrough*, 552 U.S. at 98). This federal sentencing scheme became heavily criticized.

Nearly two decades later, the federal sentencing scheme penalizing offenders underwent significant changes. Guideline sentences were no longer mandatory, but advisory. *United States v. Booker*, 543 U.S. 220, 244–45 (2005). And a sentencing judge could find that "a within-Guidelines sentence is greater than necessary to serve the objectives of sentencing" and "consider the disparities between the Guidelines' treatment of crack and powder cocaine offenses." *Kimbrough*,

2

552 U.S. at 87. By 2010, Congress passed the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372, to reduce, though not eliminate, the heavily criticized sentencing disparity between powder and crack cocaine. *Dorsey v. United States*, 567 U.S. 260, 267-68 (2012). The FSA not only lowered the crack-to-powder ratio from 100-to-1 to 18-to-1 but also eliminated mandatory minimum for "simple possession" of cocaine base. FSA § 3, 124 Stat. at 2372; *see United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013). Under the FSA, an individual who trafficked 50 grams of cocaine base would now be subjected to a five-year mandatory minimum, the same as someone who trafficked 500 grams of powder cocaine. *See* 21 U.S.C. § 841(b)(1)(B)(iii). The FSA took effect on August 3, 2010.

The penalty provisions of the FSA only applied to crack cocaine offenders sentenced on or after August 3, 2010 however, even if an offense was committed before that date. *Dorsey*, 567 U.S. at 267-68. Those sentenced prior to the FSA's enactment could not benefit from the reduction in sentencing disparities. The Sentencing Commission then promulgated Guidelines Amendments 750 and 782, which lowered the base offense levels associated with different amounts of crack cocaine. *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). Unlike the FSA, these guidelines amendments applied retroactively and offered those sentenced prior to the enactment of the FSA an opportunity for relief under 18 U.S.C. § 3582(c)(2) ("§ 3582"). Those sentenced prior to the enactment of the FSA however, could only obtain relief under § 3582 if their guidelines range was lowered by any of the amendments. *Black*, 737 F.3d at 286-87; *Wirsing*, 943 F.3d at 179. But for individuals who were sentenced prior to August 3, 2010 for crack cocaine offenses and whose guidelines range were not lowered by any amendments to the guidelines, their sentences were still defined by the 100-to-1 crack to powder cocaine sentencing disparity.

3

Then came the FIRST STEP Act. On December 21, 2018, Congress passed the FIRST STEP Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which among other things, made certain provisions of the FSA retroactive. The FIRST STEP Act authorizes courts to "on motion of the defendant...impose a reduced sentence" for a criminal defendant who (1) was convicted of a statute, for which the penalties were modified by Sections 2 or 3 of the FSA; (2) if the offense was committed before August 3, 2010; and (3) if the defendant did not already receive a reduction under the FSA or the FIRST STEP Act. *See* FIRST STEP Act, § 404, 132 Stat. 5194, 5222. Thus, all those who were denied relief under the FSA, may now petition the courts for relief under the FIRST STEP Act.

The FIRST STEP Act provides courts an opportunity to correct unjust sentences and restore fairness to the federal sentencing scheme related to crack cocaine offenses. Any court reviewing a petitioner's motion based on § 404 of the FIRST STEP Act should therefore take into consideration all the changes to the federal sentencing scheme that has occurred since a petitioner's sentence. *See Abuelhawa v. United States*, 556 U.S. 816, 821 (noting that federal courts must presume that Congress acts in the context of relevant case law); *United States v. Schaefer*, 120 F.3d 505, 507 (4th Cir. 1997) (noting that the law in effect at the time governs sentencing). This includes changes that may not directly relate to FSA, but may otherwise affect federal sentencing, such as the United States Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) and *Allyene v. United States*, 570 U.S. 99, 103 (2013). Under the current case law, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. Likewise, any fact that increases a mandatory minimum must be submitted to the jury. *Alleyne*, 570 U.S. at 103. With this background in mind, the Court now turns to the facts of Petitioner's case.

4

## II. FACTUAL AND PROCEDURAL HISTORY

On December 8, 1993, Defendant was one of several co-defendants named in a 23-count indictment charging defendants with federal drug and money laundering offenses. ECF No. 839. On June 27, 1994, Petitioner was found guilty by a jury of Count One, Conspiracy to Possess with Intent to Distribute and Distribute Mixture and Substance Containing Cocaine and Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); Count Two, Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), 371, and 2; and Count Three, Engaging in a Continuous Criminal Enterprise ("CCE"), in violation of 21 U.S.C. § 848.

According to the presentence report ("PSR"), Petitioner was attributed with having over 255 kilograms of crack cocaine. ECF No. 855 at ¶ 59. Petitioner's base offense level was 42. *Id.* at 34–41. Petitioner received an additional 4 points for his CCE conviction pursuant to § 2D1.5(a)(1) and a 2-point enhancement for possession of a dangerous weapon, bringing his total offense level to 48. *Id.* With a criminal history category of VI, Defendant's guideline range was Life. *Id.*

On September 15, 1994, Petitioner was sentenced to Life in prison. ECF No. 378. The Court vacated Petitioner's conviction on Count One for conspiracy given that it was a lesser-included offense to the CCE conviction. *Id.* Defendant was then sentenced to 240 months imprisonment on the money laundering count and Life imprisonment on the CCE count, both counts to run concurrently. *Id.*; *see also* ECF No. 850.

Petitioner's convictions and sentence were affirmed on appeal. *See United States v. Wainsworth Marcellus Hall*, 93 F.3d 126 (4th Cir. 1996). Petitioner's motions for relief under 28 U.S.C. § 2255 were denied. ECF Nos. 620, 666, 715; *see Hall v. United States*, 30 F. Supp.2d 883 (E.D. Va. 1998). Petitioner's request to reduce his sentence for his crack cocaine offenses and his

motions to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) were also denied. ECF Nos. 745, 792, 819. Subsequently, Petitioner's request for relief under Amendment 505 and Amendment 782 were also denied. [1]

On October 22, 2019, Petitioner filed a motion to reduce his sentence under the FIRST STEP Act. ECF No. 837. The Government opposed the motion on December 6, 2019. ECF No. 857. Petitioner filed a reply on January 6, 2020. ECF No. 858. Having been fully briefed, this matter is now ripe for judicial determination.

### III. LEGAL STANDARD

When a court imposes a sentence of imprisonment, that is considered a final judgment on the matter. 18 U.S.C. § 3582(b). It is well established that "[t]he law closely guards the finality of criminal sentences against judicial 'change of heart.'" *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (citing *United States v. Layman*, 116 F.3d 105, 109 (4th Cir. 1997)). Under statutory law, a "court may not modify a term of imprisonment once it has been imposed" except in limited circumstances, including "to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). The FIRST STEP Act is a statute that expressly permits courts to modify a term of imprisonment. *See Wirsing*, 943 F.3d at 179.

### IV. DISCUSSION

Petitioner seeks relief under § 404 of the FIRST STEP Act through 18 U.S.C. § 3582(c)(1)(B). The parties disagree on whether Petitioner should be granted relief under the

---

[1] On June 22, 2009, the Court found Petitioner ineligible for relief pursuant to Amendment 505, which reduced the upper limit of the drug quantity table from level 42 to level 38. ECF No. 745. Under Amendment 505, Petitioner's base offense level for Count Three was 38. Petitioner received a 4-point increase pursuant to § 2D1.5(a)(1), and a two-point enhancement for possession of a dangerous weapon. *Id.* Petitioner's new offense level was 44. *Id.* However, the revised calculation of an amended offense level of 44 with a criminal history category of VI, still required a term of life imprisonment for CCE (Count Three). Therefore, Petitioner was denied relief under Amendment 505. On February 16, 2016, Petitioner's relief under Amendment 782, which lowered the base offense levels associated with different amounts of crack cocaine, was also denied because Petitioner's guidelines range remained the same. ECF No. 792.

FIRST STEP Act. *Compare* ECF Nos. 837, 858 *with* ECF No. 857. In determining whether to grant Petitioner's request for relief, this Court must decide (A) whether Petitioner is eligible for a sentence reduction under the FIRST STEP Act; (B) whether the Court will exercise its discretion to grant relief; and (C) if applicable, what relief should be granted.

## A. Eligibility

The parties dispute whether Petitioner is eligible for relief under the FIRST STEP Act. Eligibility under § 404 of the FIRST STEP Act is simple. *See Wirsing*, 943 F.3d at 186 (noting that there is no indication that Congress intended a complicated and eligibility-limiting determination at the eligibility stage of the analysis). If an individual (1) was convicted under a statute for which the penalties were modified by § 2 or § 3 of the FSA; (2) committed the offense before August 3, 2010 ("covered offense"); and (3) did not already receive a reduction under FSA or the FIRST STEP Act, then that individual is eligible to move for relief under the FIRST STEP Act. *Id.*

The parties do not dispute that Petitioner meets the second and third requirements under the FIRST STEP Act – Petitioner committed the offense before August 3, 2010, and Petitioner has not already received relief under the FSA or the FIRST STEP Act. The parties however dispute whether Petitioner meets the first requirement of being convicted of a statute for which the penalties were modified by § 2 or § 3 of the FSA. The Government argues that Petitioner's CCE conviction under 21 U.S.C. § 848 is not a covered offense. ECF No. 857 at 5–7. Petitioner on the other hand argues that his CCE is a covered offense for purposes of the FIRST STEP Act because the penalties for the underlying offense under the CCE were modified by § 2 or § 3 of the FSA. ECF No. 858 at 2–8. Additionally, Petitioner argues that his CCE conviction is a covered offense because the FSA modified the statutory penalties of § 848. *Id.* On this additional argument, the

7

Government partially agrees. The Government contends that because Petitioner did not receive the statutory penalty of mandatory life under § 848(b), which incorporates § 841(b)(1)(A), then Petitioner's § 848 conviction is not a covered offense. ECF No. 857 at 5. In other words, the Government indicates that while a conviction under § 848(b) may be a covered offense, Petitioner's conviction under § 848(a) and (c) are not covered because these provisions have nothing to do with the quantity of crack. *Id.* at 5–6.

A conviction under CCE requires a violation of a drug statute where "such violation is part of a continuing series of violations." 21 U.S.C. § 848(c). Specifically, an individual is engaged in a CCE if: "(1) he violates any provision of [the federal drug laws, i.e.,] the punishment for which is a felony; and (2) such violation is a part of a continuing series of violations of [the federal drug laws, i.e.,] ..." that involved five or more persons for whom the individual was an organizer and obtained a substantial income or resources. 21 U.S.C. § 848(c); *see also Richardson v. United States*, 526 U.S. 813, 815 (1999). An individual convicted under CCE faces a mandatory minimum of 20 years. 21 U.S.C. § 848(a). However, an individual could face mandatory life in prison if that individual was the "principal administrator, organizer or leader of the enterprise, or one of several principal administrators, organizers, or leaders" and the violation "involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title" or "the enterprise...received $10 million dollars in gross receipts during any twelve month period of its existence for the manufacture, importation, or distribution of a substance described in section 841(b)(1)(B)." 21 U.S.C. § 848(b).

At the time of Petitioner's conviction in 1994, the indictment did not allege a specific violation under either § 848(a) or (b) to expose him to a specific penalty provision based on conviction. *See* ECF No. 839. Nor was the government required to do so. But Petitioner was still

8

subjected to the penalties involved in § 848(b) and therefore faced a mandatory minimum under 21 U.S.C. § 848(a) or potentially mandatory life under § 848(b), if certain factors were proven by a preponderance of evidence at sentencing. This Court therefore does not agree that because § 848(a) or (c) does not specifically cross-reference § 841 or § 846, that it has nothing to do with the quantity of crack cocaine particularly in Petitioner's case. Indeed, if Petitioner was found at sentencing to have led an enterprise that involved 300 times the quantity of crack cocaine established in § 841, Petitioner would have been subjected to a mandatory life term required by § 848(b). The fact that Petitioner was not sentenced under § 848(b), where the indictment didn't identify a specific provision, does not take away the fact that the object of Petitioner's enterprise was trafficking crack cocaine.

This brings the Court to another key point – Petitioner was convicted of CCE because he committed a series of underlying violations under § 841 and § 846. To convict under § 848, a jury in a federal criminal case must unanimously agree not only that a defendant committed some "continuing series of violations" but also that the defendant committed each of the individual "violations" necessary to make up the "continuing series." *Richardson*, 526 U.S. at 815. Petitioner's conviction for CCE included his conspiracy to traffic crack cocaine. The indictment specifically charged Petitioner with conspiring to distribute at least 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1). ECF No. 839. The indictment also specifically charged Petitioner with engaging in CCE *by violating 21 U.S.C § 841 and 846. Id.* at 14 (emphasis added). Petitioner was then convicted, by a jury, of Conspiracy to Possess with Intent to Distribute and Distribute Mixture and Substance Containing Cocaine and Crack Cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count One); and CCE, in violation of 21 U.S.C. § 848 (Count Three). Because the conspiracy conviction is considered a lesser included offense of the CCE, this

Court vacated Petitioner's sentence for conspiracy, and sentenced Petitioner for the CCE count.[2]
Thus, the underlying "series of violations" for Petitioner's CCE offense included violations of
crack cocaine offenses under 21 U.S.C. § 841(a)(1) and (b)(1)(A). The statutory penalties of 21
U.S.C. § 841(a)(1) and (b)(1)(A) were modified by the FSA.

Given the facts of this case, this Court holds that Petitioner's conviction for CCE is a
"covered offense" under the FIRST STEP Act, not only because the provisions Petitioner was
convicted under references § 841 and § 846, but also because the essence of Petitioner's conviction
under § 848 involved Petitioner's trafficking of crack cocaine. The mere title of a statute does not
prevent Petitioner's eligibility under the FIRST STEP Act where the object of Petitioner's offense
was dealing in crack cocaine. To hold otherwise would render the FIRST STEP Act useless where
the goal of the act is to correct unjust sentences given to those who dealt with crack cocaine and
who could not benefit from the changes to the federal sentencing scheme over the last two decades.
Meeting all the eligibility requirements under the FIRST STEP Act, Petitioner is eligible for relief.

### B. Discretion

While Petitioner is eligible for relief under the FIRST STEP Act, it is entirely within the
Court's discretion whether to grant Petitioner any relief. Section 404(c) of the FIRST STEP Act
provides that "[n]othing in this section shall be construed to require a court to reduce any sentence
pursuant to this section." Courts use different approaches when deciding whether to exercise its
discretion to grant any relief. *See United States v. Rose*, 379 F. Supp. 3d 223, 231 (S.D.N.Y. 2019).
Some Courts re-evaluate § 3553(a) factors, some consider post-rehabilitation, while others

---

[2] Petitioner was convicted specifically under § 846 for crack cocaine, the statutory penalties which were
modified under the FSA. Had Petitioner's conspiracy charged remained, Petitioner would have also been
eligible for relief because Petitioner's conspiracy charge which included crack cocaine, is a covered offense
under the FIRST STEP Act. To now find Petitioner ineligible because his conspiracy charge was vacated in
the presence of a CCE conviction for trafficking crack cocaine, would defeat the purpose of the FIRST STEP
Act.

consider both. *Id.*; *United States v. Shields*, No.1:08-CR-314, 2019 WL 3003425, at *7 (M.D. Pa. July 10, 2019); *Pepper v. United States*, 562 U.S. 476, 491 (2011).

The Government argues that even if Petitioner is eligible, this Court should not exercise its discretion to grant relief because Petitioner was the "the leader of a violent large scale crack cocaine drug trafficking organization that spanned five years...[and given] his abysmal criminal history... he is not the type of Defendant who should receive reconsideration of his sentence." ECF No. 857 at 7. Petitioner of course disagrees emphasizing his post-rehabilitation, and noting that to date, he has served approximately 313 months actual prison time with good time. ECF No. 858 at 1. In deciding whether to exercise discretion, this Court will re-evaluate § 3553(a) factors, consider evidence of Petitioner's rehabilitation, and the purpose of the FIRST STEP Act as it pertains to Petitioner's case.

To start, the Court understands the seriousness of Petitioner's conduct. Petitioner was a leader in a conspiracy that involved eleven-co-defendants, all who are out of prison at this time.[3] The conspiracy which spanned five years was massive, involving large amounts of crack cocaine and resulting in several violations of other federal crimes. Prior to his federal convictions for conspiracy, money laundering, and CCE, Petitioner had juvenile convictions for burglary, theft, and attempting to cause bodily injury. Petitioner's adult criminal convictions also included burglary, theft, but also criminal possession of a controlled substance. ECF No. 855. At age 29, Petitioner stood before this Court as a career offender who had two prior felony convictions for

---

[3] Petitioner's co-defendant and older brother Peter Hall was murdered before he could stand trial. According to the BOP's website, Petitioner's co-defendants were released on the following dates: Todd Moore's release date is unknown, but he is no longer in BOP custody; Frankie D. Thomas was released on August 18, 2006; Derrick Kelley was released on December 8, 2005; Rodney Gainey was released on December 18, 2009; Eric F. Marshall was released on June 21, 2001; Patrick Avent was released on April 14, 1997; John Stokes was released on February 13, 2006; Dirk Ladson was released on February 9, 2017; Kemba Niambi Smith was released on December 22, 2000; and Norman McAllister was released on October 6, 2000. *See* https://www.bop.gov/inmateloc/.

burglary of a dwelling, and an income that did not come from legitimate employment but from Petitioner's criminal conduct. *Id.* at ¶ 24–25.

Petitioner is now 55 years old and has accepted full responsibility for his role in the conspiracy. ECF No. 840. He has served more than 26 years, nearly half his life in prison. As Petitioner notes, this is the equivalent of a sentence of approximately 350 months (nearly 30 years). ECF No. 858 at 1. When Petitioner was sentenced in 1993, he had a mandatory guidelines range of life. *See* ECF No. 855. Though Petitioner entered prison with a life sentence, he took great strides at not only rehabilitating himself, but also his fellow inmates. While in prison, Petitioner received his GED and has completed over 2,900 hours of education courses and received over 80 certificates, including drug addiction, computer information systems, parenting, keyboarding, anger management, health and wellness, finance, and reentry. ECF No. 838; *see also* ECF Nos. 840, 846, Exhibit ("Ex.") 6.

Whereas in 1993, Petitioner had lack of employment, Petitioner has since maintained and performed many jobs while in prison such as working as an automotive mechanic at UNICOR. *See* ECF No. 845, Ex. 9. Petitioner has also devoted time to helping others, becoming a Senior Suicide Watch Companion and a mentor for the youth and other inmates. ECF No. 838. In the last eight years, Petitioner has not received any disciplinary infractions. ECF No. 838 at 10. And Petitioner's previous infractions were for nonviolent minor offenses. *see also* ECF No. 840 (noting that for the last two decades, Petitioner has not had a single fight, and no history of violence). Because of his conduct in prison, many BOP members, including the chief and staff psychologists, wrote letters of support on behalf of Petitioner's request for relief. ECF Nos. 841–844. Petitioner has also received letters of support from friends and family members who Petitioner has maintained close contact with over the years. ECF Nos. 847–850; *see also* ECF No. 840. Petitioner

12

has shown tremendous rehabilitation since his sentence in 1993. Petitioner now seeks relief to be reunited with his family, including his eighty-five-year-old mother, who Petitioner has seen once during his entire incarceration. ECF No. 840.

The purpose of the FIRST STEP Act is to allow individuals who were previously convicted and sentenced harshly for crack cocaine offenses the opportunity to benefit from the FSA which sought to alleviate the harsh sentencing disparities between those convicted of crack cocaine and those convicted of powder cocaine. Petitioner was sentenced for a conspiracy and a CCE that involved crack cocaine. He was held accountable for 255 kilograms of crack cocaine. ECF No. 855 at ¶ 22. At the time of Petitioner's trial, the Government did not have to prove to the jury that Petitioner distributed and/or possessed with intent to distribute specific quantities of drugs. According to the Indictment, Petitioner was charged with distributing 50 kilograms of crack cocaine and 5 kilograms of cocaine. ECF No. 839. Back then, that resulted in a mandatory advisory guideline of Life. Today, things are different. The guidelines are advisory. A jury is required to find the specific drug weight. *See Apprendi*, 530 U.S. at 490 (holding that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt); *Alleyne*, 570 U.S. at 103 (holding any fact that increases a mandatory minimum must be submitted to the jury). And the statutory penalties for crack cocaine offenses have changed under the FSA, now made retroactive by the FIRST STEP Act.

Petitioner was sentenced harshly for trafficking crack cocaine back in 1993. The FIRST STEP Act not only restores fairness to these kinds of sentences, but also seeks to benefit individuals, like Petitioner, who could not obtain relief under any Guidelines amendments. Petitioner therefore remains with a sentence that is the product of an old federal sentencing scheme that has since been declared unconstitutional. *See e.g., Booker*, 543 U.S. at 220 (holding that the

13

sentencing guidelines are no longer mandatory, but advisory); *Kimbrough v. United States*, 552

U.S. at 96; *Apprendi*, 530 U.S. at 490; *Alleyne*, 570 U.S. at 103. The FIRST STEP Act was passed

taking into consideration the many changes to the federal sentencing scheme since individuals like

Petitioner were sentenced. To deny discretion to Petitioner now based only on his conduct over 25

years ago would contradict the purposes of the FIRST STEP Act. Thus, based on the re-evaluation

of the § 3553(a) factors, evidence of Petitioner's post-rehabilitation, and the purpose of the FIRST

STEP Act, this Court will exercise its discretion and resentence Petitioner.

### C. Relief

As a threshold matter, when imposing a new sentence under the FIRST STEP Act, this

Court has the discretion to impose a new sentence on the other counts as well. Because "a sentence

is not merely the sum of its parts," and district courts impose "sentence[s] by considering all of the

relevant factors as a whole," when a new sentence is imposed, a whole sentence on all counts

should be imposed. *United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007). And Section

404(b) does not limit a court's discretion to reduce a sentence only on the covered offense. Thus,

since Petitioner is eligible for a new sentence on his covered offense, the Court may impose a new

sentence on his other counts as well or else risk "unbund[ling] the entire sentence package." *Id.*

In re-sentencing Petitioner, the Court must craft a sentence that is sufficient but not greater

than necessary to fulfill the purposes of sentencing. 18 U.S.C. § 3553(a). At every sentencing, a

court must consider the totality of the circumstances, and therefore, the Court also considers post-

conviction behavior. *Cf. Pepper v. United States*, 562 U.S. 476, 490 (2011) (holding that a district

court may consider "evidence of a defendant's rehabilitation since his prior sentencing" to support

a downward variance from the guidelines after that initial sentence has been set aside on appeal);

*United States v. Davis*, 679 F.3d 190, 195–96 (4th Cir. 2012) (holding that a "district court can

14

consider other sentencing factors" when reducing a sentence after granting a Rule 35 motion). The Court, as indicated above, has re-evaluated the § 3553(a) factors and considered Petitioner's post-rehabilitation in determining whether to exercise discretion. The Court takes this re-evaluation of the § 3553(a) factors and Petitioner's post-rehabilitation into account while imposing a new sentence.

The Court also re-evaluates Petitioner's guidelines range. At the time of his sentencing, Petitioner was held accountable for 255 kilograms of crack cocaine as was indicated in the PSR and accepted by this Court. However, because the jury was not asked to make a specific finding as to the amount of drugs Petitioner should have been attributed, the drug quaintly attributable to Petitioner must now be based on the statutory amounts alleged in the indictment, not the offense conduct as noted in the PSR. *See United States v. Wright*, No. 4:95-cr-00039 RAJ (E.D.V.A. Mar. 6, 2019); *see also Alleyne*, 570 U.S. at 103; *Apprendi*, 530 U.S. 466. Today, Petitioner is therefore responsible for the 50 grams of crack cocaine and the 5 kilograms of cocaine as alleged in the Indictment. *See* ECF No. 839. Though this amount places Petitioner at a base offense level of 30, given his CCE count, Petitioner's base offense level becomes 38. *See* § 2D1.5 of the United States Sentencing Guidelines. After adding the two-point enhancement for possession of a firearm, Petitioner's total offense level is 40. With a criminal history category of VI, Petitioner's new guidelines range is 360 months to life. [4]

This Court now sentences Petitioner as follows: 240 months on Count Two, for money laundering, and 313 months on Count Three, for CCE, all to be served concurrently. Petitioner already served 313 months in prison. The Court finds that 313 months is sufficient, but not greater

---

[4] The Court notes that even if Petitioner's guidelines range remains life, this guideline range is advisory and not mandatory. Given the Court's reevaluation of the § 3553(a) factors, evidence of Petitioner's post-rehabilitation, and the purpose of the FIRST STEP Act, this Court would still downward depart from the Guidelines.

than necessary, to reflect the seriousness of Petitioner's offense, promote respect for the law, and to provide a just punishment.

## IV. CONCLUSION

Based on the foregoing, Petitioner's motion is **GRANTED**. The Court now imposes a total sentence of **313 months** to be served as follows: 240 months on Count Two, and 313 months on Count Three, all to be served concurrently. The Court notes that Petitioner has served his sentence. Accordingly, the Bureau of Prisons is **DIRECTED** to release Petitioner from custody within 10 days of the date of this Order.

The Clerk is **DIRECTED** to send a copy of this Order to Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
February /9, 2020

Raymond A. Jackson
United States District Judge